Good morning, Your Honors. May it please the Court, Brian Lerner on behalf of Petitioner Chan. I'd like to start out with the jurisdiction of this Court to review the due process claims that were put forward. As stated under the Real ID Act, Section 106, that does give this Court jurisdiction to look at either constitutional claims or questions of law. And on the notice to appear, we were putting forward that the due process rights were violated because it didn't put the respondent on specific notice of what the person was being charged with and how they arrived at which crime was considered to be an aggravated felon. On the notice to appear itself, first of all, on Allegation 5, where it – well, Allegation 4 and 5, where it lists the two particular crimes, it basically says that Violation 487 of the California Penal Code was violated, but it doesn't say what section. And then under Allegation 5, it says Section 14107 of the Welfare and Institutions Code of California was violated, but again, it doesn't state what section. And then when it goes to the grounds of allegations. The explanation of charges were waived by counsel, were they not? Whether or not it was an aggravated felon. Doesn't that suggest counsel understood what the charges were, what the nature of the background was? Counsel may have understood that. But if it turns out that these are not aggravated felons, that these – that the respondent was not properly put on notice, then the fact that they – They're two separate things. I agree. And sticking to the notice, which is what I understand you were arguing. Yes. If the first thing that happens is counsel says we waive, doesn't that end the notice issue right there, if you don't – if you don't ask for elaboration at that point? Well, it depends what exactly is being waived. If counsel is waiving formal reading of the allegations, that's not waiving proper notice. If the counsel is waiving service, also that's not waiving proper notice in the NTA itself. As I – Counsel say we don't know what the charges are. Counsel doesn't say that. No. But what counsel – And this wasn't raised earlier, was it? Even once they knew what the charges were. Nobody raised this before. It has not been raised before, no. But – Which suggests that everybody understood. There was no surprise when it was waived it was a knowing waiver. It wasn't raised before. Now all of a sudden we get this new allegation that it was insufficient notice. I'm not even sure it's properly before us. But, again, Your Honor, what was waived didn't have to deal with the actual contents and notice of the NTA. What was waived is proper service and reading of the NTA, the allegations in the NTA itself. And explanation of the charges. I believe that was the comment. Waive. Well, explanation of the – again, I believe that there's a difference between explanation of the charges themselves and whether or not they comply with due process requirements under the Fifth Amendment. And we're putting forward that under 106 of the Real ID Act, since this is a constitutional slash question of law issue, that this Court does have jurisdiction to hear this particular case. Well, the question really isn't jurisdictional in my mind. The question is, is there a claim here? If someone's argument is I wasn't told what the charges were and the record doesn't suggest any uncertainty on the part of Petitioner what the charges were, and there's no record of any request to specify the charges, we have jurisdiction to hear the argument. But it's not a very powerful argument, because it doesn't suggest that, in fact, there was any deprivation of due process. It doesn't suggest there was any confusion about what was being alleged. So, yeah, we have jurisdiction to hear it. It doesn't mean there's a valid claim there. And what in the record suggests there really was a problem here? In the record itself, Your Honor, in the underlying court, everything was that was stated, was conceded. And what difference does this make? Well, the difference is, is if the notice to appear was issued, if it didn't make proper guides as to what was being charged and so forth, the fact it was conceded, I don't think that overrides the fact. No harm, no foul. Where's the prejudice? Where's the disadvantage? How did it affect anything? Suppose it's true that there's an obligation to be more specific in the notice to appear, and this wasn't as specific. But if Petitioner knows everything that needs to be known, what effect does it have and what is there for us to act upon? Well, I'll take your example. Let's say, for example, that this was deficient, that there wasn't proper notice given. Based upon what was given, they may have conceded. But let's say that everything that was supposed to be in here regarding the exact sections, regarding the charge of removability, what section of aggravated felony laws it's charging, maybe they wouldn't have conceded it. Maybe they would have fought it at that time. Maybe doesn't win a case. I understand, Your Honor. You've got to have some demonstration that it had a real world impact. There was prejudice. No harm, no foul. And so far, there's not a glimmer of suggestion in the record that there was any harm here. We have no declarations, nothing saying we had no idea what the charges were below. We had no way of knowing. What you've got is, again, is your speculation here now, so that even if you're right, no one up to this point has raised it, so we're talking sort of in the ether. But here, there's been no suggestion that that was a problem, at least in the record up to now. Okay. I'd like to address just one point on this issue and then move on. My point would be, if there was a due process violation, just supposing if there was, that the fact that someone concedes to the allegations in the notice to appear does not erase the fact that the due process violation may have occurred. Okay. I'd like to move to whether or not the particular crimes themselves are aggravated felonies or not. And we have two crimes here. One is California Penal Code 487. The other is 14107 of the Welfare Code. And, again, it's somewhat unclear which crime they are referring to is the aggravated felony or whether they're claiming both are the aggravated felonies. It's sort of the same issue here. But under 487, it's been held that 487C is not an aggravated felon because there's a possibility of aiding and abetting. And by the same token, 487 could have that same analysis. And since it's not clear what section of 487 is being charged, we would put forth that they, the government has not met its burden on showing that 487 itself is an aggravated felon. By the same token, under 14107 of the Welfare Code, if they're alleging that that is an aggravated felon, it seems to me that under fraud and so forth, they would have to show that there's more than $10,000 at issue here. And under 14107, one can be charged with that if any amount is fraudulent. And also, one can be placed in county jail. So as far as the time necessary, if they consider it a theft charge and a theft of more than a year in jail, there is a possibility to be put in county jail here, which indicates one can be placed for less than a year. So we would put forward that both California Penal Code 487 and 14107 of the Welfare Code under the analysis are not, under the categorical approach, cannot be considered the 101-843 aggravated felony statutes. Based upon that, we would go to the modified approach to see if there's something in the record that would indicate, under the cases that have been put forward in this circuit, whether or not they are, what sections and what conduct and so forth to see if it falls under the aggravated felony statutes. And basically, there are two items in the record which address those issues. One is the abstract of judgment, and two is the complaint. And the case law generally indicates that there should be jury instructions or signed guilty pleas or transcripts of records, something of which the decision has been made. Kennedy, but she admitted it, right? Aggravated and moral turpitude. Right. That was admitted and hasn't been ---- The allegations were admitted, correct. But if it turns out that they're not aggravated ---- Stop right there. If they're admitted, why is there still an issue? The notice to appear, what was admitted was what was specifically placed on the notice to appear, that section 487 was violated and that section 14107 was violated. It wasn't admitted specifically as to what section, just that those were admitted. As to the charges of removability, 101-843 was admitted. But if it's turned ---- if it is determined that these are not aggravated felonies, then that would vacate those admissions. I mean, the fact that someone ---- Do you have any case law to support that proposition? I mean, ordinarily, you plead guilty, that's it. The government doesn't have to come back five years later and prove the case again. If you concede a removability, is there any reason to expect that those removability issues come back to life in the future? And it was on both grounds. I would argue that if a case gets up to the circuit court and the circuit court later determines that the particular crime is not an aggravated felon, that the admission to those particular crimes would be vacated, it would be able to ---- That's exactly against the requirements of exhaustion. If you have arguments you're supposed to raise them to the agency. If you don't raise them to the agency, the arguments are waived. You're now suggesting that you don't have to raise arguments to the agency. You can wait until you get to the court of appeals and then pull them out of a sack. I don't think ---- that's why I asked, do you have any case law to support that proposition? Because exhaustion runs very much the other direction. I understand, Your Honor, under ---- for under 106A1A triple I of the Real ID Act, that that particular statute gives this Court jurisdiction to listen to these types of arguments. In effect, what you're saying is that in the normal situation, if the I.J. asks what the position is going to be and the individual admits, says yes, we concede, we concede deportability, we concede removability, et cetera, the government still has to put on a case just to ensure that they're not going to get blindsided when it gets to this court by saying, whoa, yeah, we admitted it, but now we don't admit it anymore. That's effectively what you're saying. Haven't you misunderstood the statute? The statute gives us authority to review questions of law. It doesn't give us authority to make up the law for the first time. I understand, Your Honor. And my point, and I'll just adjust this quickly and move on to my next one. I'll defer to my more senior colleague. I'll answer his question. Okay. Thank you. I don't believe, again, I think what the issue here is that the fact that this particular charge was conceded is being interpreted as that if it is later determined that it's an aggravated felon, that nothing can be done to go back to rectify this particular case. The same type of thing. Well, you heard us on Lake Julicata. There's a reason that there are rules. And if you don't follow the rules, that's the end of the case. And in this case, there was no attempt to say these should be proved. You can't keep the government couldn't keep the charge back, you can't keep the argument back. Suddenly springing on the government here. I understand, Your Honor. I think this is sort of akin to years ago when people had various DUIs. Those were considered, in certain respects, aggravated felons. It was later determined that those weren't. And then people could go back, make motions to reopen based upon the fact that those particular laws no longer constituted aggravated felonies. You can try to make a motion to reopen, but we don't accept motions to reopen. We're not in the business of finding out what arguments should have been made before and weren't. I understand. And if this Court were to rule, for example, that these particular crimes are not aggravated felonies, then the motion to reopen wouldn't be made here. The motion to reopen would be made to the BIA or the underlying court. Okay. I'd like to move on to the deferral of removal. Basically, as the record states, the immigration judge discounted, it seems to me, a large part of the evidence considering the possible torture and rape and so forth. And when looking at the record itself and looking at the conditions in Cambodia, there is a large amount, it's full of abuses that go on there, the torture, the rape, and the prison torture and so forth. And it appears from the record that the judge did not, the immigration judge did not take any of that into consideration in denying the deferral of removal. And I'd like to reserve the rest of my time for rebuttal. You may. May it please the Court. I am Blair O'Connor, again representing the Attorney General on this matter. Your Honors, the Petitioner in this case conceded before the immigration judge that she was removable both as an aggravated felon and as an alien convict of two or more crimes involving moral turpitude. Furthermore, she did not challenge either of these findings in her removability to the, findings of her removability in her brief to the Board. Accordingly, she has waived any challenge to the findings of her removability in this case because of her failure to exhaust her administrative remedies. Moreover, because Petitioner is removable for having committed criminal offenses enumerated in 8 U.S.C. 1252a2c, this Court lacks jurisdiction to review her final order of removal except to the extent that she raises constitutional claims or questions of law. The Court lacks jurisdiction over the only constitutional claim raised, however, because she did not raise her lack of notice issue regarding the omission of information in her notice of appear either before the immigration judge or the Board. Because Petitioner fails to raise any other constitutional claims or questions of law regarding the denial of her applications for withholding or removal and protection under the Torture Convention, this Court should dismiss the petition for review for lack of jurisdiction. Now, under 8 U.S.C. 1252d1, this Court's jurisdiction is limited only to those issues that Alien has exhausted as of right before the agency. Here, Petitioner conceded both of the charges of removability and did not challenge them before the Board. Therefore, this Court lacks jurisdiction to consider her claim raised for the first time on appeal to this Court that the aggravated felony charge does not stand under current case law. Furthermore, even assuming that the Court were to consider whether or not her offenses constituted aggravated felonies, it would still lack jurisdiction over this petition for review because it is independently barred from hearing this case because of her admission that she is an alien convicted of two or more crimes involving moral turpitude. The two or more CMIT crimes is enumerated in the statute which bars this Court's jurisdiction to review removal orders of criminal aliens, so that is an independent bar to the Court's review of this petition for review. Now, following enactment of the Real ID Act, this Court does retain jurisdiction to review constitutional claims and questions of law raised by criminal aliens in petitions for review. The only constitutional claim raised here is the due process challenge based on the alleged lack of notice in her charging document by failing to specify the subsection of the aggravated felony statute that she was charged with having violated. As has been argued, the Court lacks jurisdiction over this issue because it was not raised either before the Immigration Court or the Board. And she ---- Well, I don't want to be dancing on the head of a pen, but I have to say I've always had trouble with that for two reasons. One is that it makes us look at the record below to find out if we have jurisdiction. And ordinarily, jurisdiction is more of a threshold before you've looked at things issue. But more importantly for this case, the Real ID Act phraseology makes a point of saying nothing and anything else in this section takes away jurisdiction. So it would seem to trump the separate section which you cited that appears to make exhaustion a jurisdictional requirement. So on the level of jurisdiction, the way the statutes track and our case law tracks, it looks like, well, jurisdiction, yes, but then you immediately get to exactly the same question with regard to exhaustion and in terms of remedy, the merits. So I don't know whether it winds up being called dismissed or denied. They all go to exactly the same conclusion. But I tell you, I'm not sure jurisdiction really does it because the Real ID Act phraseology appears to trump everything else. I understand, Your Honor. It's a very complicated issue. I mean, the way that 242a2d is worded is it says nothing in subsection B or C or this chapter, and then it says in parentheses, except this section, in parentheses, will preclude review of constitutional claims or questions of law. Because there's another provision in that section that requires exhaustion, because the Board can consider certain constitutional issues like lack of notice I mean, again, that's why I make the argument that conceivably her failure to exhaust it would deprive this Court of jurisdiction. But I'm not aware of whether or not that issue has been addressed by any court of appeals. Again, even assuming that obviously the Court were to address a due process issue, it lacks merit for several reasons. First of all, the Department of Homeland Security did actually attempt to lodge an additional charge that did specify the subsection of the aggravated felony statute. And that appears in Administrative Record 428. When it attempted to lodge that charge before the IJ, he inquired, well, hasn't that already been charged in the initial notice of appearance? So the DHS withdrew it. But the fact that it was that additional charge was served on Petitioner, that did specify the subsection of the aggravated felony statute that they were providing under. Therefore, she did have notice. Now, having presented no other constitutional claims or questions of law in her petition for review, the only remaining issues involved the merits of her applications for withholding or removal and protection under the Convention Against Torture. Your Honors, there is currently an inter- and intra-circuit split on the issue of whether the courts of appeal have jurisdiction to review factual-based merits determinations on withholding or removal and torture convention applicants filed by criminal aliens. Both the Seventh and Eighth Circuits have held that the courts lack jurisdiction to review solely factual-based merits determinations that are filed by criminal aliens. In Ruiz-Morales v. Ashcroft, a panel of this Court also held that it lacked jurisdiction to review a board decision denying a criminal alien's applications for relief that were based on the merits of the actual applications. In Okinawa v. Gonzales, and most recently the Morales v. Gonzales decisions, different panels of this Court held they could review the merits determinations of torture convention claims made by criminal aliens. Now, in the recent January 3 decision, Morales, a panel of this Court attempted to distinguish the Ruiz-Morales decision by stating that the alien in that case was denied torture convention relief because he had been convicted of an aggravated felony. Now, the actual Ruiz-Morales decision does not state why the torture convention claim was denied. But going back and looking at the briefs that were filed in that case, it makes very clear that the applications were denied, in fact, on their merits, on the facts, and had nothing to do with their criminal conviction. Therefore, we would say that there continues to be an intra-circuit split in this Court on the issue of whether or not the Court can review factual merits-based determinations of applications for relief filed by criminal aliens. And we would urge this panel to follow Ruiz-Morales and the Seventh and Eighth the Court can review of criminal aliens are questions of law and constitutional based claims. Even assuming, however, the Court were to find that it has jurisdiction to review the merits of the Withholding of Torture Commission claims, it should nonetheless affirm the Board's decision because the record fails to compel the conclusion that Petitioner faces a clear probability of either persecution or torture if she was removed to Cambodia. Although her family was without question persecuted by the Khmer Rouge regime prior to her leaving Cambodia in 1980, that regime has long since been removed from Cambodia. The sole grounds on which she alleged a clear probability of future persecution or torture if she were to be deported were that she would stand out as a repatriate immigrant from the United States and would be subjected to imprisonment and possible torture and that she would be raped and sexually abused because she was a female. The other evidence of record in this case, however, fails to support her assertion. Although the 2002 State Department report indicates that those who had been repatriated pursuant to the memorandum of understanding between the United States and Cambodia were detained upon their return and it does indicate that some were forced to pay bribes during their detention, all of the repatriated Cambodians had been released by the end of the year in 2002, and the report states, quote, the government subsequently has respected the rights of these individuals and their efforts to integrate themselves into society, end quote. That's Administrative Record at 162. Furthermore, the report introduced by Petitioner, which addresses the repatriation agreement between the United States and Cambodia, fails to support her claim. This report indicates that the first two groups of repatriated Cambodians faced a smooth, albeit anxious, transition. Although the third group of repatriates experienced longer illegal detention and extortion for almost a month, they were released after pressure from human rights organizations. And the report said nothing to indicate that those who had been repatriated were actually tortured in confinement upon their return. Moreover, the immigration judge properly gave this report diminished weight because  of the fact that the first two groups of repatriated Cambodians had been released   themselves into society, end quote. In this court, Conner, as we told other counsel, we read the record. Yes, Your Honor. I want to ask you a question. These work. Yes, Your Honor. It's in the discretion of the enforcement section of the agency. So I say you may not want to comment on it. But I will comment on it to this extent. This woman has been here since the age of 9. She basically was formed in the way she behaves by the way she was educated here and responded to our society. And I believe her when she says she looks and talks and walks like an American. It's going to be very rough to send her back. And I would like you to bear that in mind if you have any possibility of talking to the enforcement section. Because the referral removal is possible within the discretion of the district director. So you don't need to comment, but I'd like to make that point to you. I understand, Your Honor, and I will relay that concern to my client. The only other comment I would make is that even under deferral removal, the alien must establish a clear probability of future persecution and torture, notwithstanding to what she may have experienced in the past, and that the record in this case does not compel that conclusion. But, again, I will definitely relay that. It doesn't compel the conclusion by a legal standard, but the executive branch doesn't have to apply the same standard to itself. It has an idea of what's going on in Cambodia. And we ask them to – this does seem to be a case where prosecutorial discretion, particularly with deferral giving you a handle on a person's future behavior, it might be appropriate to examine for that. I completely understand, Your Honor. I will relay that to my client. I'll tell you the section of Gordon and Mailman and Yale on immigration law that this is discussed is section 72.03H. That's Gordon and Mailer on immigration law, Your Honor? Yeah. Gordon and Mailman. And there will be a test next week. So barring any further questions from the Court, we would ask that this petition for review be dismissed for lack of jurisdiction. Thank you, Your Honors. I'll submit on the record. Thank you. Thank both counsel. The case just argued is submitted. The next case in this morning's calendar is United States v. – let's take a short break. We've got two more cases in the calendar. We'll take about a five-minute break before we take this up.
judges: Noonan, Clifton: Schiavelli